J. J. NUGENT CO., A CORPORATION OF THE STATE OF NEW JERSEY, AND JOHN J. DUNN CONSTRUCTION CO., A CORPORATION OF THE STATE OF NEW JERSEY, A JOINT VENTURE, PLAINTIFFS-RESPONDENTS, v. ALAN SAGNER, COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF TRANSPORTATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 14, 1977—Decided June 24, 1977.

190

Before Judges LORA, CRANE and MICHELS.

Mr. *William F. Hyland,* Attorney General of New Jersey, attorney for appellant (Mr. *Stephen Skillman,* Assistant Attorney General, of counsel; *Messrs. Steven A. Tasher* and *Daniel P. Reynolds,* Deputy Attorneys General, on the brief).

*Messrs. Carpenter, Bennett* and *Morrissey,* attorneys for respondents (Mr. *John C. Heavey,* of counsel; Mr. *John C. Phillips* on the brief).

PER CURIAM. On November 12, 1975 plaintiffs J. J. Nugent Co. and John J. Dunn Construction Co., a joint venture, filed a complaint in Superior Court, Law Division, Atlantic County, against defendant Alan Sagner, Commissioner of the New Jersey Department of Transportation, seeking damages for alleged breach of contract. The suit is brought under the New Jersey Contractual Liability Act, *N. J. S. A.* 59:13–1 *et seq.,* and arises out of plaintiffs' participation in the construction of a section of Route 95 in Mercer County. *N. J. S. A.* 59:13–4 provides that all suits filed

against the State under the act shall be in accordance with the rules governing the courts of New Jersey.

On January 26, 1976, pursuant to *R.* 4:3–3(a) (1) & (3), defendant moved to change the venue from Atlantic County to Mercer County on the ground that venue had not been laid in accordance with *R.* 4:3–2(a) (2) and on the further ground that a change of venue was required in the interest of justice in light of the severe burden and inconvenience which trial in Atlantic County would pose to defendant. It is undisputed that the work was performed in Mercer County; the cause of action arose in that County; the contract was signed there, and defendant and the records of the job are located there.

Leave to appeal from the trial judge's denial of the motion was granted by this court on August 4, 1976.

A motion for change of venue is governed by *R.* 4:3–3(a) which provides in pertinent part for such change "if the venue is not laid in accordance with *R.* 4:3–2 or for the convenience of parties and witnesses in the interest of justice."

*R.* 4:3–2 provides that:

Venue shall be laid by the plaintiff in Superior Court actions as follows: * * * (2 )actions not affecting real property which are brought by or against municipal corporations, counties, public agencies or officials, in the county in which the cause of action arose; (3) except as otherwise provided in [other rules not pertinent to this case] the venue in all other actions in the Superior Court shall be laid in the county in which the cause of action arose, or in which any party to the action resides at the time of its commencement, or in which the summons was served upon a nonresident defendant.

Venue was laid in Atlantic County, the residence of one of the plaintiffs. The cause of action arose in Mercer County. The trial judge ruled that venue was laid in accordance with *R.* 4:3–2(a) because subsection (3) and not (2) applies to the circumstances of this case. Specifically, the trial judge found that defendant is not a "public officer" nor is the Department of Transportation a "public agency" within the

meaning of subsection (2). *J. J. Nugent Co. v. Sagner,* 141 *N. J. Super.* 591, 596 (Law Div. 1976).

In reviewing the status of the prior law as well as the general state of the law at the time the rule was promulgated, the trial judge was attempting to ascertain whether there was "something about the language [of the rule] or its effect" which would compel him to construe it other than according to it the generally accepted meaning of its words. *Downey v. Jersey City Bd. of Ed.,* 74 *N. J. Super.* 548, 552 (App. Div. 1962). Stated differently, the trial judge was seeking to construe the rule, giving "due regard [for] the old law, the mischief resulting therefrom, and the enacted legislative remedy for the eradication of the evil." *Health Dept. v. Sol Schnoll Dressed Poultry Co.,* 102 *N. J. Super.* 172, 176 (App. Div. 1968). The application of these principles led the judge to conclude that there was no evidence that the rule at issue here was specifically designed to remedy abusive practices in suits against the State.

The trial judge further concluded that the existence of the doctrine of sovereign immunity in 1949 when the court rules, and in particular *R.* 4:3–2(a)(2), were adopted, did not strongly support the view advanced by plaintiffs that the draftsmen did not contemplate a direct suit against a branch of government and never intended to include the State and its officials within the terms "public agency or official" in *R.* 4:3–2(a)(2). We agree with the trial judge's conclusion in this regard and note that while sovereign immunity was still the general rule, some limitations thereon had already been established by legislation and judicial decree. Moreover, the venue rule in question applies to suits "by or against" a public agency or official, a clear indication that the draftsmen did not have the doctrine of sovereign immunity in mind when the predecessor to *R.* 4: 3–2(a)(2) was developed. Consequently, the existence of the doctrine of sovereign immunity in 1949 is of little significance as an aid to construction of the rule.

In concluding that venue was properly laid in Atlantic County under *R.* 4:3–2(a)(3), the trial judge determined that the rule was ambiguous and utilized the *ejusdem generis* rule of construction as a basis for his determination that defendant and the Department of Transportation do not fall within the meaning of the terms "public agencies or officials."

█ The rule of *ejusdem generis* is set forth in *Transcontinental Gas Pipeline Corp. v. Dept. of Conservation & Development,* 43 *N. J.* 135 (1964) as follows:

\* \* \* in the construction of statutes when general words follow specifically named things of a particular class, the general words must be understood as limited to things of the same class, or at least of the same general character. [at 146]

The trial judge noted that the terms "public agencies or officials" are immediately preceded by the terms "municipal corporations, counties." He therefore reasoned that the scope of public agencies or officials should not be given their broad general meaning but should be construed to embrace only public agencies and officials similar in nature to the specific government bodies listed, *i. e.,* local agencies or officials, not state agencies or officials. We disagree.

█ It is our view that greater effect should have been given to the literal meaning of the language of the rule and that the trial judge should not have applied the rule of *ejusdem generis.*

\* \* \* [W]here the wording of a rule is precise and free from ambiguity on its face, there is no need for judicial interpretation, reliance upon extrinsic material or exercise of discretion. [*State v. Zold,* 105 *N. J. Super.* 194, 200 (Law Div. 1969), aff'd o. b. 110 *N. J. Super.* 33 (App. Div. 1970), certif. den. 57 *N. J.* 131 (1970)]

Accord, *State in Interest of L. B.,* 99 *N. J. Super.* 589, 598 (J. & D. R. Ct. 1968). Similarly, "[i]n the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well under-

stood meaning." *Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467, 478 (1964), *cert.* den. 379 *U. S.* 14, 85 *S. Ct.* 144, 13 *L. Ed.* 2d 84 (1964). Accord, *Service Armament Co. v. Hyland,* 70 *N. J.* 550, 556 (1976). In our opinion, defendant falls within the literal meaning of the rule and there is little in the history of the rule or the circumstances surrounding the adoption of its predecessor which militates for a contrary construction. Under the circumstances, application of the *ejusdem generis* rule is uncalled for and, in effect, creates more ambiguities than it resolves. Extrinsic aids to construction should not create ambiguity. *Safeway Trails, Inc. v. Furman,* 41 *N. J. supra* at 482.

The predecessor to the rule was *R. R.* 3:3–2 which included the language "municipal corporations *or* counties *or* public agencies *or* officials," *Rabin v. Pollit,* 11 *N. J. Super.* 127, 128 (Law Div. 1950), instead of the current "municipal corporations, counties, public agencies or officials." We believe the use of the disjunction "or" between each term in the original rule indicates that the four terms were intended to delineate four distinct categories. This counters the mandate of the *ejusdem generis* rule as applied by the trial judge insofar as that rule establishes the first two terms as limitations on the scope of the latter terms. Additionally, we view the deletion of the word "or" from the current rule as a grammatical change not intended to alter the meaning of the rule but merely an attempt to make the rule more readable so that the rule, even in its present form, is intended to be read in pertinent part "municipal corporations or counties *or* public agencies *or* officials."

Furthermore, application of the rule of *ejusdem generis* has been rejected where, as here, the rule or statute is not ambiguous.

In *State v. Goodman,* 9 *N. J.* 569 (1952), the court was called upon to determine whether a Deputy Director of the Newark Department of Public Affairs and an inspector in the Newark Department of Health were "officers" within

the meaning of the extortion statute, *R. S.* 2:127–1, which provided:

Any judge, magistrate, sheriff, coroner, constable, jailer or other officer who shall by color of his office, receive or take any fee or reward whatsoever not allowed by law for doing his office, shall be guilty of a misdemeanor.

The argument was advanced that since the statute specifically listed officers who carry out the judicial process, the general term "other officer" should be limited to those connected with the judicial process. The court, without referring to the rule of *ejusdem generis* by name, refused to limit the scope of the statute to persons connected with the judicial process, especially in view of a long history of convictions under this statute of persons not related to the judicial process.

In *Downey v. Jersey City Bd. of Ed.*, 74 *N. J. Super.* 548 (App. Div. 1962), we found that the terms "any office, employment or position" in *N. J. S. A.* 40:69A–208(a) referred to "independent" boards, departments or bodies as well as subordinate boards, departments or bodies.

(a) No subordinate board, department, body, office, position or employment shall be created and no appointments shall be made to any subordinate board, department or body, or to any office, employment or position, including without limitation patrolmen and firemen, between the date of election of officers and the date the newly elected officers take office under any optional plan.

In so ruling we stated that

\* \* \* the rule of *ejusdem generis* is to be resorted to as an aid to construction only when words of a statute are of doubtful meaning, and not when the legislative design is expressed in plain terms; and plain general terms of a statute must be given their ordinary meaning, even if beyond the particularity of associated words, unless it appears from the context or the effect that the legislature must have intended otherwise. [*Id.* at 553]

See also, *Edwards v. Moonachie*, 3 *N. J.* 17, 23 (1949).

Moreover, examination of the use of the terms "public officer" and "public agency" elsewhere in the *Rules Governing the Courts of New Jersey* supports our conclusion that, as used in *R*. 4:3–2(a)(2), the words "public agencies and officials" must be accorded their plain and ordinary meaning. *R*. 4:71, entitled "Appeals from Local Agencies," includes the language "local officer, board, body or commission," which indicates that the draftsmen would have used the word "local" in *R*. 4:3–2(a)(2) if they intended it to apply only to those public agencies or public officials that are confined to a local presence. Similarly, where the scope of a rule involving a governmental agency or officer is intended to be limited, the referential word "thereof" often appears: *R*. 4:28–4(a) ("subdivision or an agency or officer thereof") ; *R*. 1:15–1(c) ("attorney for the municipality * * * or any agency or officer thereof"). Here, the absence of the word "thereof" is further evidence that the rule in question should be given a broad construction. Also, the use of the term "agency" in *R*. 1:9–6(a) and the subsequent use of the term "administrative agency" in subsection (c) of the same rule leads us to believe that "agency" was intended to be a broad, all-encompassing term, and that if a specific kind of agency were the subject of the rule in question, more specific language would have been used.

In addition, when the draftsmen intended that a rule apply to the general class of public officials or officers, they used the term "public officers." See, *e. g.*, *R*. 4:26–7 ; *R*. 4:34–4 ; *R*. 1:9–6. A senior division material inspector of the State Highway Department, now a part of the Department of Transportation pursuant to *N. J. S. A*. 27:1A–3, was held to be a public officer in *Pfitzinger v. Bd. of Trustees, etc., Retirement System*, 62 *N. J. Super*. 589, 602 (Law Div. 1960). Given this, his superior officer, defendant Commissioner, clearly falls within the general category of public officers. In *Manshel v. Agger*, 131 *N. J. Eq*. 444, 447 (Ch. 1942), the Commissioner of Banking was held to be a public

officer. The virtual interchangeability of the terms "public officer" and "public official" in the context of this case is further supported by the classic definition of "office" contained in *Fredericks v. Board of Health,* 82 *N. J. L.* 200, 201 (Sup. Ct. 1912), which clearly demonstrates that defendant holds an office or, in other words, is an official.

An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties.

Also, it is noteworthy that an engineer with the Highway Department has been considered a public official for the purpose of immunity to personal liability for good faith acts performed in his official capacity. *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc.,* 31 *N. J.* 124 (1959).

We are mindful that agencies or officers such as the Department of Transportation and defendant are often referred to as "state agencies" or "state administrative agencies" and "state officers," respectively. See, *e. g., R.* 2:2–3; *R.* 2:4–1(b). *Cf. De Rose v. Byrne,* 135 *N. J. Super.* 273 (Ch. Div. 1975), vacated 139 *N. J. Super.* 132 (App. Div. 1976); *Keenan v. Essex Cty. Bd. of Chosen Freeholders,* 106 *N. J. Super.* 312 (App. Div. 1969). In *Pfleger v. Dept. of Transportation,* 98 *N. J. Super.* 386 (Ch. Div. 1967), rev'd 104 *N. J. Super.* 289 (App. Div. 1968), the Department of Transportation was held to be a state administrative agency within the meaning of the predecessor to *R.* 2:2–3. Nevertheless, we do not believe that the absence of the word "state" or "administrative" from *R.* 4:3–2(a)(2) evidences an intention to exclude state agencies and officers from the scope of "public agencies or officers."

Furthermore, we do not believe that the distinction between "the State" and "public agencies" drawn in the New Jersey Tort Claims Act, *N. J. S. A.* 59:1–1 *et seq.,*

which was passed contemporaneously with the New Jersey Contractual Liability Act, *N. J. S. A.* 59:13-1 *et seq.,* under which this suit was brought, necessarily means that those terms are always to be construed as mutually exclusive. The overall term used to define those public bodies liable to suit in tort under the Act is "public entity," which includes:

\* \* \* the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in this State. [*N. J. S. A.* 59:1-3]

The State is defined as

\* \* \* the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued.

Clearly, the Department of Transportation falls within the definition of "State." However, in the absence of an explicit reference to "State" in the definition of "public entity," we would have no difficulty in holding the Department of Transportation a "public agency" within that definition. The mere fact that the Legislature sought to make the statute a bit more clear by providing a precise definition of "State" should not be construed as evidencing an intention to distinguish "the State" from "public agencies" for all purposes.

We find little support for plaintiffs' claim that *R.* 4:3-2 (a) (2) was simply not intended to apply to entities having a statewide presence as opposed to a local presence, *e.g.,* municipalities, counties and local agencies. Interestingly, the Department of Transportation is divided into four regional districts with respect to the issuance of highway construction and maintenance permits. *N. J. A. C.* 16:41-1.

Having concluded that the trial judge's construction of the rule was in error, venue should then be transferred to Mercer County where the cause of action arose. *Diodato v.*

*Camden Cty. Park Comm'n,* 136 *N. J. Super.* 324 (App. Div. 1976). See also, *Engel v. Gosper,* 71 *N. J. Super.* 573 (Law Div. 1962); *Countrywood Estates v. Donnelly,* 42 *N. J. Super.* 456 (App. Div. 1956).

In view of our conclusion aforesaid, we need not and do not reach the question of whether the State was entitled to a transfer of venue to Mercer County for the convenience of parties and witnesses in the interest of justice. *R.* 4:3–3 (a) (3).

Reversed and remanded to the Law Division, Atlantic County, with a direction that an order be entered transferring the cause to the Law Division, Mercer County.