**Mark HINES, Appellant,**

v.

**JOHN B. SHARKEY CO., Appellee.**

**No. 81–1056.**

District of Columbia Court of Appeals.

Argued July 6, 1982.

Decided Aug. 26, 1982.

William I. Martin, Washington, D. C., for appellant. Ronald F. Mitchell, Washington, D. C., filed the briefs for appellant.

Stephen O. Hessler, Washington, D. C., for appellee.

Before KELLY, FERREN and PRYOR, Associate Judges.

FERREN, Associate Judge:

This case presents one question: whether under Super. Ct. L & T R. 5(b) a tenant-defendant in a landlord's action for possession may counterclaim for a rent abatement—based on housing code violations—not only for the period for which the landlord claims nonpayment of rent, but also for a prior period of the tenancy. The trial court concluded that the tenant's counterclaim must be limited to the period for which the landlord claimed rent was due, and thus awarded the tenant an abatement only for those months. We disagree. We reverse and remand for the trial court to permit reinstatement of the portion of the tenant's counterclaim that the court did not resolve on the merits.

I.

On June 1, 1980, appellant, Mark Hines, entered into a residential lease agreement

---

with appellee, John B. Sharkey Co.[1] Appellant claims that, at about this time, he notified appellee of housing code violations on the premises, and that he complained repeatedly about the conditions throughout the summer and fall of 1980. On October 17, 1980, the D. C. Department of Housing and Community Development inspected the premises and found 24 violations of the housing code. On February 20, 1981, appellee sued for possession of the premises based on appellant's failure to pay rent for three months, December 1980 through February 1981.

At trial, John B. Sharkey, appellee's owner and manager, admitted that 18 violations of the housing code existed on the premises. Sharkey, however, denied that he had been informed of the conditions before February 10, 1981, when he received a hand-delivered copy of the housing inspection report. He argued, moreover, that appellant in any event should not be entitled to a rent abatement because appellant had denied Sharkey access to make repairs. The trial court disagreed, concluding that the tenant was entitled to an abatement of $50 per month. The court, however, accepted appellee's argument that under Super. Ct. L & T R. 5(b) the tenant could not assert a counterclaim based on housing code violations predating the period for which the landlord claimed nonpayment of rent. The court, therefore, made no findings as to the proper rent abatement, if any, for the period between June and November 1980, although the court had conducted an inquiry into the condition of the premises during that period. Appellant timely noted his appeal. *See* D.C.Code 1981, § 11–721(a)(1); D.C.App.R. 4 II(a)(1).

II.

In order to interpret Super. Ct. L & T R. 5(b), we look first at the language of the rule:

*Counterclaims.* In actions in this Branch for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or *a counterclaim for a money judgment based on the payment of rent* or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this Branch. This exclusion shall be without prejudice to the prosecution of such claims in other Branches of the Court. [Emphasis added.] [2]

Rule 5(b) includes no qualifier limiting the time period to which the counterclaim must relate.[3] We decline to imply a time limitation on a tenant's counterclaim when it would be contrary to the plain language of the rule. *Williams v. State,* 378 So.2d 902, 903 (Fla.Dist.Ct.App.1980); *Samuel Reiter Painting Co. v. Bill Miedler Homes, Inc.,* 87 Mich.App. 75, 78, 273 N.W.2d 592, 594 (1978) (per curiam); *J. J. Nugent Co. v.*

---

1. Appellant states in his brief that he assumed occupancy on May 15, 1980 and signed a lease in June.

2. The former rule, D.C.C.E. Gen.Sess. L & T R. 4(c), permitted the tenant to set up a defense of recoupment or a setoff but prohibited the filing of a counterclaim unless the landlord asked for a money judgment for rent. *See Bell v. Tsintolas Realty Co.,* 139 U.S.App.D.C. 101, 104, 430 F.2d 474, 477 (1970); *Jones v. Sheetz,* D.C.App., 242 A.2d 208, 211 n.3 (1968); *Antonelli v. Smith,* D.C.Mun.App., 113 A.2d 570, 572 (1955); *Paregol v. Smith,* D.C.Mun.App., 103 A.2d 576, 578 (1954).

3. Super.Ct. L & T R. 5(b) does limit the scope of permissible counterclaims to those based on the landlord and tenant agreement, including

the implied warranty of habitability. *See Winchester Management Corp. v. Staten,* D.C.App., 361 A.2d 187, 192 (1976) (breach of landlord and tenant agreement concerning air-conditioning services might be proper subject of counterclaim under Rule 5(b) even though it did not constitute an implied warranty of habitability defense under *Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970)). Claims for personal injury, Rule 5(b), or for damages to personalty, *Miles Realty Co. v. Garrett,* D.C.App., 292 A.2d 152, 153 (1972), may not be raised in the Landlord and Tenant Branch of Superior Court.

*Sagner,* 151 N.J.Super. 189, 194, 376 A.2d 945, 947–48 (App.Div.1977) (per curiam); *State v. McIntyre,* 92 Wash.2d 620, 622, 600 P.2d 1009, 1010 (1979) (en banc); *see United States v. Clark,* —— U.S. ——, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982) (court must look to plain language of statute); *Convention Center Referendum Committee v. District of Columbia Board of Elections and Ethics,* D.C.App., 441 A.2d 889, 911 (1981) (en banc) (same); *Citizens Association of Georgetown v. Zoning Commission,* D.C. App., 392 A.2d 1027, 1032 (1978) (en banc) (same); *Dankman v. District of Columbia Board of Elections and Ethics,* D.C.App., 443 A.2d 507, 514 (1981) (en banc) (same; regulation).[4]

Furthermore, evidence concerning housing conditions is not easily severable into monthly time units. When a landlord contests a claimed code violation or, as here, alleges that the tenant created it, the court normally will conduct a factual inquiry into the cause of the alleged violation, exploring the nature and extent of it from its inception.[5] If the court may not award damages for the period preceding the landlord's claim, another court will have to make the identical factual inquiry in a subsequent tenant suit for breach of the warranty of habitability, causing inevitable litigation over complex questions of issue preclusion, as well as duplication of testimony. We decline to interpret Rule 5(b) in a way that artificially severs a claim based on one nucleus of facts into two legal actions. It would be contrary to considerations of fairness and judicial economy to hold two separate proceedings concerning one continuing dispute between the landlord and tenant.

Appellee argues that the summary nature of landlord and tenant proceedings will be impaired if this court permits the Landlord and Tenant Branch to consider a counterclaim for housing code violations that predate the landlord's claim for rent. We agree that the summary nature of the proceeding is altered when tenants plead counterclaims, setoffs, and defenses based on alleged housing code violations. *See Bell v. Tsintolas Realty Co.,* 139 U.S.App.D.C. 101, 108, 430 F.2d 474, 481 (1970). Other mechanisms, however—such as the use of protective orders requiring the tenant to pay rent into the court registry—are the best means of protecting landlords' interests, *id.,* 138 U.S.App.D.C. at 377, 430 F.2d at 482, given that "judicial economy and fundamental fairness clearly justify the permitting of . . . a counterclaim in any instance in which the plaintiff's claim for possession is premised on an arrearage in rent." Minutes of the Landlord-Tenant Subcommittee of the Advisory Committee on Superior Court Rules of Civil Procedure, meeting of Mar. 23, 1972 (position of Subcommittee majority on Super. Ct. L & T R. 5(b)) (quoted in *Management Partnership, Inc. v. Garris,* D.C.Super.Ct., 109 D.W.L.R. 789, 796 (Mar. 17, 1981)); *cf. United States v. Mihalopoulos,* 228 F.Supp. 994, 1002 (D.D.C.1964) (notes of advisory committee on Rules of Criminal Procedure "are somewhat analogous to a Congressional Committee Report in determining the intention of the framers of the Rules").[6]

Also, it is important to note that when a tenant is the first to sue for a rent abate-

---

4. A tenant's counterclaim, of course, will be limited in all forums by the three-year statute of limitations. *See* D.C. Code 1981, § 12–301(7) and (8) (three-year statute of limitations applies to suit for breach of express or implied contract and to action for which a limitation is not specially prescribed). *Cf. Management Partnership, Inc. v. Crumlin,* D.C.App., 423 A.2d 939, 942 n.* (1980) (landlord's action for damages based on tenant's allegedly improper termination of lease is contract action governed by § 12–301(7)); *Javins, supra,* 38 U.S.App. D.C. at 380, 428 F.2d at 1082 (contract principles of warranty of habitability applied to landlord and tenant dispute).

5. Here the court conducted an extensive inquiry into the condition of the apartment at the time the tenant initially rented it.

6. The summary nature of the proceedings is also altered by allowing a jury trial. *Bell, supra* 139 U.S.App.D.C. at 108, 430 F.2d at 481. *See Pernell v. Southall Realty,* 416 U.S. 363, 383–85, 94 S.Ct. 1723, 1733–34, 40 L.Ed.2d 198 (1974) (provision of jury trial may create some delay but will not "significantly impair" efforts to expedite landlord and tenant adjudications).

ment, a landlord's subsequent suit for possession alleging nonpayment of rent will be consolidated with the first suit, without affecting the scope of the tenant's claim. *See Hsu v. Thomas,* D.C.App., 387 A.2d 588 (1978) (per curiam). Thus, if, when the landlord sues first, a tenant's counterclaim for rent abatement were to be limited to the period covered by the landlord's suit, that limitation would penalize a tenant who had tried to improve housing conditions by negotiating with the landlord before withholding a portion of the rent or taking the landlord to court. The trial court's counterclaim limitation, advocated by appellee, would encourage tenants to withhold rent immediately or to race to the courthouse, in order to assure that their entire claim, not just part of it, could be used to limit the amount of the landlord's judgment for rent.

In conclusion, we hold that a tenant may base a counterclaim under Super.Ct. L & T R. 5(b) on housing code violations that predate the period for which the landlord claims rent is due. We reverse the trial court's judgment to the extent that it struck appellant's counterclaim and remand for further proceedings consistent with this opinion.[7]

*So ordered.*

---

**7.** Given our conclusion regarding the proper interpretation of Rule 5(b), we need not reach appellant's argument that the court could not limit the time period for a tenant's counter-claim through the adoption of a procedural rule because of the alleged effect that such a rule would have on substantive rights.