**Uhura WILLIAMS, Appellant**

v.

**Nicole PAUL, Appellee.**

**No. 06–CV–930.**

District of Columbia Court of Appeals.

Argued Feb. 13, 2008.
Decided March 27, 2008.

---

**3.** The respondent's failure would have also been a violation of our Rules of Professional

Conduct.

Julie H. Becker, with whom Barbara McDowell and Robyn M. Holtzman, were on the brief, for appellant.

William P. Byrd, for appellee.

Before FARRELL and RUIZ, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

In this action by Nicole Paul (the landlord) for possession and other relief, Uhura Williams (the tenant) appeals from an order of the trial judge (Weisberg, J.) dismissing without prejudice her counterclaim for recoupment of rent paid. In her counterclaim, the tenant alleged substantial housing code violations. Concluding that the landlord's action was not based on the non-payment of rent, the trial judge ruled that the tenant's counterclaim was not authorized by Super. Ct. L & T R. 5(b). The trial judge's ruling was contrary to an earlier decision by the motions judge (Fisher, J.), who had denied the landlord's pretrial motion to dismiss the counterclaim. We conclude that it was error to dismiss the counterclaim. Accordingly, we reverse.

## I.

Ms. Paul and Ms. Williams became landlord and tenant in August 2004, when Ms. Paul purchased the building located at 3526 Clay Place N.E. in Washington, D.C. At that time, Ms. Williams resided in Apartment 3, which she had been renting from the prior owner since 2001. Ms. Williams lived in the unit with her four children, who ranged in age from five to eleven.

Soon after Ms. Paul acquired the building, Ms. Williams brought to her attention several alleged deficiencies in the condition of her unit. Ms. Williams complained of mold, water leaks, cockroach infestation, exposed electrical wires, and other defective conditions. In October 2004, the Department of Consumer and Regulatory Affairs conducted an inspection of the apartment, and subsequently ordered Ms. Paul to make certain repairs. According

to Ms. Williams, these repairs were inadequate. Ms. Williams alleged that over the following year, she continued to encounter numerous problems in her apartment, including leaking water from the ceiling and, during winter, lack of heat.

Despite these deficiencies, Ms. Williams continued to pay her rent of $550 per month to the landlord. The landlord claimed, however, that Ms. Williams' rent payments were consistently untimely, in violation of the tenant's obligations under the lease. On November 7, 2005, Ms. Paul served Ms. Williams with a thirty-day notice to correct the violations or vacate the premises. In the notice, Ms. Paul alleged a number of violations of the lease, as follows:

[Y]our violation consists of the following: Consistent late payments, Non payment of rent for months October & November = $1020 total (October rent $550 − $150 rent discount = $400 plus $35 late fee November rent $550 plus $35 late fee total $1020). Landlord seeks possession of unit.

Ms. Williams declined to vacate her apartment in response to the landlord's notice, and on February 22, 2006, Ms. Paul filed suit for possession and other relief in the Landlord & Tenant Branch of the Superior Court's Civil Division.

In her complaint, the landlord asked the court to grant her possession for "Violations of Notice to Cure or Vacate: Consistently late rent; Overoccupancy; Subletting." The complaint also stated that "the landlord asks the court for . . . judgment for rent, late fees, other fees, and costs in the amount of $550.00." The notice to correct or vacate was attached to the complaint.

Ms. Williams filed a motion to dismiss the landlord's complaint, claiming that the complaint and notice to correct or vacate were defective. On May 9, 2006, the judge then assigned to the Landlord & Tenant Branch (Canan, J.) struck the claims of "overoccupancy" and "subletting" on the ground that they had not been included in the notice to correct or vacate. In all other respects, the judge denied the tenant's motion to dismiss. At the conclusion of the hearing on Ms. Williams' motion, her attorney inquired as to what claims remained pending:

COUNSEL FOR TENANT: Your honor, just so I'm clear. So the overoccupancy [and] subletting allegations were stricken by your prior order?

THE COURT: Correct.

COUNSEL FOR LANDLORD: Yes.

COUNSEL FOR TENANT: And the remaining ones are the *non-payment of rent* and consistent late payments?

THE COURT: Correct.

(Emphasis added.) Counsel for the landlord voiced no objection to the foregoing characterization of the questions that remained in the case.

On May 12, 2006, three days after the court had denied her motion to dismiss the complaint, Ms. Williams filed an answer and counterclaim. In her counterclaim, Ms. Williams sought to recoup rent she had paid since Ms. Paul assumed ownership, alleging substantial housing code violations.

On May 26, 2006, the landlord filed a motion to dismiss the counterclaim, contending primarily that "the Counter–Complaint seeks to apply as an end around method to defend a breech [sic] of lease claim on alleged housing code violations when such a defense is not recognized by this court." Ms. Williams opposed the motion, arguing that the counterclaim was authorized by Landlord and Tenant Rule 5(b). Ms. Williams pointed out that in the notice to correct or vacate, on which the complaint was based, the landlord had al-

leged non-payment of rent for October and November 2005. The tenant also noted that in her complaint, Ms. Paul had sought a judgment for rent in the amount of $550, representing a single month's rent. Ms. Williams contended that because the landlord had alleged non-payment of rent and had sought a judgment for unpaid rent, the tenant was entitled, under Rule 5(b), to raise counterclaims "for a money judgment based on the payment of rent."

The motions judge (Fisher, J.) heard argument on the landlord's motion on June 8, 2006. During the hearing, counsel for the landlord asserted that the complaint alleged consistent late payment (*i.e.*, a breach of the lease, to which Rule 5(b) does not apply), but not non-payment of rent. In response to the tenant's argument that both the notice and the complaint included claims for unpaid rent, counsel for the landlord stated that Ms. Williams had become current in her rent payments prior to the initial return date. The motions judge ruled, however, that "[b]ased upon the information that I have before me, at least, this case is in whole [or][1] in part, a motion for possession based upon non-payment of rent, and I would deny the motion to dismiss the counterclaim."

On June 22, 2006, the case proceeded to a bench trial before the trial judge (Weisberg, J.). At the beginning of the trial, the landlord's attorney renewed his objections to the counterclaim, arguing—as he had previously contended before the motions judge—that Ms. Williams had "brought herself current," that the complaint was not based on non-payment of rent, and that therefore the counterclaim was not authorized by Rule 5(b). The tenant's attorney responded that because

Ms. Paul had made a claim for non-payment of rent in her complaint, Ms. Williams had the right to proceed with her counterclaim. Counsel also informed the trial judge that "all these issues were aired and decided upon previously" by the motions judge, and that the motions judge had denied the motion to dismiss the counterclaim.

The trial judge stated that the earlier decision controlled, and that "I'm not going to redo a ruling that Judge Fisher's already made." The judge observed: "I am not sure what I would have ruled, but I think it is probably law of the case. It's a dispositive ruling on a point that was fully briefed and argued.... And I'm not going to change the ruling just because you got another chance to argue the same point that you already argued and lost before a different judge."

The trial proceeded on the landlord's claim that the tenant had breached the lease by her consistently late payment of rent. At the close of the plaintiff's case in chief, the trial judge found that Ms. Williams had, indeed, become current in her rent two days after the complaint was filed. Acting *sua sponte*, the judge then revisited the question whether the tenant was entitled to pursue her counterclaim. The judge stated that "[n]otwithstanding Judge Fisher's ruling to the contrary," he "[did] not see" why the counterclaim could be at issue in the case, given that there was no dispute as to whether Ms. Williams owed rent. After hearing argument, the judge dismissed the counterclaim without prejudice. The judge ruled that the complaint (as distinguished from the notice to correct and vacate) did not allege non-payment of rent.[2] In the alternative, the

---

1. In the transcript, the judge is quoted as saying "in whole if not in part." This appears to be either an incorrect transcription or a slip of the tongue.

2. In the complaint, which was on the standard form in use in the Landlord and Tenant

judge held that even if non-payment was adequately alleged, the tenant had indisputably cured the violation, so that it would be "unreasonable to construe the complaint as a complaint for possession for non-payment of rent." The judge stated that "[w]ithout prejudice to [Ms. Williams's] right to assert her counterclaim, wherever she chooses to assert it as an affirmative claim, I'm not going to permit it as a counterclaim to this complaint. And if it reverses a ruling that you relied on, so be it." The tenant prevailed at trial with respect to the landlord's complaint,[3] and she filed a timely appeal from the dismissal of the counterclaim.

## II.

On appeal, Ms. Williams contends

1. that the trial judge violated the doctrine of the law of the case by failing to adhere to the motions judge's decision denying the landlord's motion to dismiss the counterclaim; and

Branch, the landlord had initially apparently checked Box A ["The tenant failed to pay [rent]" ...], but the checkmark was subsequently crossed out.

3. The judge ruled in Ms. Williams' favor with respect to the landlord's claim for possession based on consistent late payment. Ruling that forfeiture of the lease was not warranted in light of all of the circumstances, the judge stated that Ms. Williams was "one of the more responsible tenants I've seen in all the time I've worked in the landlord and tenant court," and he found her testimony to be credible "in virtually all respects." The judge denied the landlord's claim for possession, and he entered judgment in favor of Ms. Williams.

4. "The 'law of the case' doctrine bars the trial court from reconsidering the same question of law that was presented to and decided by another court of coordinate jurisdiction." *Kritsidimas v. Sheskin*, 411 A.2d 370, 371(D.C.1980) (per curiam). This court has, on occasion, reversed judgments of the trial

2. that the trial judge erred as a matter of law by holding that the counterclaim was not authorized by L & T R. 5(b).

Because we agree with the tenant's second contention, we need not decide whether reversal would be warranted on the first ground asserted by her.[4]

█ The question whether the counterclaim remained viable at the time of trial turns on the proper construction of Super. Ct. L & T R. 5(b). In order to construe Rule 5(b), we look first to its language. *Hines v. John B. Sharkey Co.*, 449 A.2d 1092, 1093 (D.C.1982). We review *de novo* the trial judge's construction of the Rule. *In re Estate of Grealis*, 902 A.2d 821, 824 n. 5 (D.C.2006):

█ Rule 5(b) provides as follows:

(b) Counterclaims.

In actions in the Branch for recovery of possession of property in which the basis of recovery is non-payment of rent or in

court for failure to follow the law of the case. *See, e.g., P.P.P. Productions, Inc. v. W & L Inc.*, 418 A.2d 151, 152–53 (D.C.1980); *Kritsidimas*, 411 A.2d at 371–73. We have recognized that the doctrine "discourag[es] judge-shopping and multiple attempts to prevail on a single question." *Kritsidimas*, 411 A.2d at 371. But "[o]bviously we cannot be expected to reverse a correct decision by one [trial] judge because we find that it is contrary to a prior ruling by another [trial] judge in the same case, *i.e.*, contrary to the law of the case." *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 593 (D.C.2000) (quoting *Parmelee Transp. Co. v. Keeshin*, 292 F.2d 794, 797 (7th Cir.), *cert. denied*, 368 U.S. 944, 82 S.Ct. 376, 7 L.Ed.2d 340 (1961)) (internal quotation marks omitted). Therefore, "in an appeal to this court where views of the law expressed by a judge at one stage of proceedings differ from those of another at another stage, *the important question is not whether there was a difference but which view was right*." *Id.* (Emphasis added) (citing *Barnes v. Schlein*, 192 Conn. 732, 473 A.2d 1221, 1222 (1984)).

which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this Branch. This exclusion shall be without prejudice to the prosecution of such claims in other Branches of the Court.

Super. Ct. L & T R. 5(b). A counterclaim for recovery of rent paid, or for injunctive relief related to the premises, is thus authorized in two circumstances: (1) where the landlord's claim for possession is based on a allegation that the tenant has failed to pay rent; and (2) where the landlord seeks a monetary judgment for unpaid rent, even if the possessory claim is "based on other defaults." *Griffith v. Butler,* 571 A.2d 1161, 1164 n. 4 (D.C.1990).[5]

The complaint against Ms. Williams presented both of the bases for asserting a counterclaim pursuant to Rule 5(b). First, the landlord claimed, as a partial "basis for recovery," that Ms. Williams had failed to pay rent for the premises. In the notice to correct or vacate, which was attached to and incorporated in the complaint, Ms. Paul alleged, *inter alia,* "Non payment of *rent for* months October & November = $1020 total; (October rent $550 − $150 rent discount = $400 plus $35 late fee; November rent $550 plus $35 late fee total $1020)." (Emphasis added.)[6] The only plausible understanding of the notice, and of the complaint to which it was attached, was that the landlord was seeking possession, in part, on the basis of the tenant's alleged non-payment.

Second, the complaint, on its face, requested "judgment for *rent,* late fees, other fees, and costs in the amount of $550.00," *i.e.,* one month's rent. (Emphasis added.) This request is indisputably a "claim for recovery of rent in arrears" within the meaning of Rule 5(b). Thus, by its plain language, the complaint alleged that Ms. Williams had not paid the rent due, and the landlord also sought possession on that ground, as well as a judgment for the alleged arrearage. Moreover, at the hearing before Judge Canan on May 9, 2006, the judge stated, without objection from counsel for the landlord, that the claim for non-payment of rent remained in the case. The counterclaim was filed three days later.

Ms. Williams' payment of the rent due while the case was pending did not impair the court's authority and duty to resolve her counterclaim. By filing a complaint

---

5. The tenant does not claim that she would have the right to assert a counterclaim based on housing code violations even if the landlord's suit were based solely on consistently late payment of rent. Accordingly, we do not address that question. *But see Suggs v. Lakritz Adler Mgmt., LLC,* 933 A.2d 795, 800 (D.C.2007) ("where housing regulation violations are asserted by a tenant and the action is based on the continual failure to pay the rent due in a timely manner, such violations cannot be irrelevant to the question of what rent was in fact due; that is, in the words of the statute, the rent to which the housing provider is entitled") (internal quotation marks omitted); *cf. Luskey v. Borger Mgmt., Inc.,* 917 A.2d 631, 632–33 (D.C.2007) (per curiam) and *Kaiser v. Rapley,* 380 A.2d 995, 997 (D.C.1977) (differentiating between a claim based on non-payment of rent and a claim predicated on "a willful, calculated and consistent failure by a tenant to pay rent when due").

6. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Super. Ct. Civ. R. 10(c) (incorporated into the Landlord and Tenant Branch by Super. Ct. L & T R. 2).

that placed rent at issue, the landlord provided the necessary predicate under Rule 5(b) for the tenant to file a counterclaim for recoupment of rent based on alleged housing code violations. Nothing in Rule 5(b) requires the landlord's claim of non-payment of rent to remain at issue throughout the case in order for the counterclaim to proceed.

In dismissing the counterclaim, the trial judge relied on the fact that the tenant had become current in rent by the initial return date, so that the allegation of non-payment had become "an untrue complaint." The judge was of the opinion that because Ms. Williams could have obtained summary judgment on the landlord's claim that rent was due, the court lacked jurisdiction to hear the counterclaim. We do not agree.

Rule 5(b) permits the assertion of a counterclaim whenever the landlord asserts non-payment as a basis for recovery or makes a claim for rent in arrears. There is nothing in the Rule to suggest that a counterclaim is authorized only if the claim of non-payment is meritorious. Similarly, the Rule does not require that the allegation of non-payment must survive until trial in order for the tenant to have the right to litigate her counterclaim. There is no basis for reading such a limitation into the unambiguous language of Rule 5(b). *Cf. Hines*, 449 A.2d at 1093 ("We decline to imply a time limitation on a tenant's counterclaim [thereby confining the claim to the time period alleged in the landlord's complaint] when it would be contrary to the plain language of the rule."). To be sure, the claim of failure to pay rent in this case was maintainable, as

a practical matter, only for a very short time. As of the date when the counterclaim was filed, however, the complaint still asserted this claim, and the counterclaim could properly be pursued.

■ Rule 5(b) also must be read consistently with Super. Ct. Civ. R. 41(a)(2), which is incorporated into landlord-tenant proceedings by L & T R. 2. Rule 41(a)(2) provides that "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the Court." Thus, a defendant's counterclaim may go forward even if the plaintiff's claim has been resolved or dismissed before trial. *See, e.g., Fischer v. Estate of Flax*, 816 A.2d 1, 3 (D.C.2003); *Gill v. Howard Univ.*, 801 A.2d 949, 949 (D.C.2002); *Metropolitan Baptist Church, Inc. v. Minkoff*, 462 A.2d 460, 460 (D.C.1983).[7]

In other words, a landlord may not secure the dismissal of a tenant's counterclaim merely by dismissing his or her claim for non-payment of rent. Once the landlord has filed suit alleging non-payment, Rule 41(a)(2) authorizes the tenant to pursue the counterclaim to such judgment. Significantly, in this case, the landlord did not amend, or seek leave to amend, her complaint to remove the claim for possession based on non-payment, nor did she ask the court to dismiss the request for rent in arrears. In the absence of an amendment of the pleading, the complaint alleged, *inter alia*, that Ms. Williams owed rent to her landlord. The merit or

---

7. This case is unlike *Management P'ship, Inc. v. Garris*, 109 Daily Wash. L. Rptr. 789 (Super. Ct. D.C. 1981). In that case, the court dismissed without prejudice a former tenant's counterclaim for recoupment of rent paid, where that former tenant had already vacated the premises, so that a landlord-tenant relationship no longer existed. We need not decide whether we would follow *Garris*, a decision written more than a quarter of a century ago by the author of this opinion, if the issue in *Garris* were now presented to us.

lack of merit of this allegation did not affect its inclusion in the complaint as an asserted basis for recovery. Having presented that claim to the court, and having failed to amend her pleading, the landlord also subjected herself to a counterclaim pursuant to Rule 5(b).

### III.

For the foregoing reasons, the order of the trial court dismissing without prejudice the tenant's counterclaim is reversed. The case is remanded to the trial court for proceedings consistent with this opinion.

*So ordered.*[8]

---

**8.** As a practical matter, now that the trial judge has dismissed the counterclaim, the outcome of this appeal may make little real difference to the parties. In light of our reversal of the judgment, the tenant may pursue her counterclaim in the Landlord & Tenant Branch. If we were to affirm the judgment, the tenant would be free to pursue her allegation of housing code violations as an affirmative claim in the Civil Division. Indeed, in light of a post-trial stipulation of the parties that Ms. Williams' claim did not exceed $5,000, which is the jurisdictional limit of the Small Claims & Conciliation Branch, *see* D.C.Code § 11–1321 (2001), Ms. Williams was free to proceed in that Branch. We cannot say, however, that the appeal is moot, and it assuredly was not moot at the time of trial, when the tenant was asserting a claim up to $11,000, far above the jurisdictional limit of the Small Claims and Conciliation Branch. Moreover, to entertain counterclaims in cases such as this avoids duplication of testimony, as well as "inevitable litigation over complex questions of issue preclusion." *Hines*, 449 A.2d at 1094.