## ROOTE v. ROOTE.

---

EQUITY; DIVORCE; ADULTERY.

1. The rule that when a litigant comes into a court of equity he must come with clean hands refers only to the matter to be litigated, and no other.

2. A man who marries a woman while she is an inmate of a house of prostitution, and thereafter lives with her for a short time in the same house, but who afterwards procures and offers her a home in a respectable place of abode, which offer she refuses, is entitled to a divorce on the ground of her subsequent adultery, where there is nothing to show that he connived at it, or has been guilty of a similar offense since he offered to live with her and condone the past.

No. 1996. Submitted May 5, 1909. Decided June 1, 1909.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, dismissing a bill of complaint for divorce.                      *Reversed.*

The facts are stated in the opinion.

*Mr. William J. Neale* for the appellant.

There was no appearance for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an action for divorce, brought in the supreme court of the District of Columbia by appellant, Olan G. Roote, complainant below, against his wife, Charlotte E. Roote, alias Lottie E. Roote, alias Alice Williams, defendant. From a decree of the court dismissing the bill, the case comes here on appeal.

It appears that complainant and defendant were married in the city of Washington on April 30, 1907. Defendant, prior to her marriage, had been an inmate of a house of prostitution in this city. Complainant had been in the habit of visiting her at this place, and was fully cognizant of the kind of life she was living. The following statement of the testimony of complainant and defendant is inserted as it appears in the record: "The plaintiff, Olan G. Roote, in response to questions by the court, stated: That, at the time of his marriage to the defendant, on April 30, 1907, he 'must have been drunk;' that, after the marriage ceremony, which was performed about 4 o'clock, P. M., he and his wife proceeded to a hotel on the north side of Pennsylvania avenue, N. W., in Washington city, where he engaged a room for himself and wife; that they stayed at the hotel for several days, and that he paid for his own and his wife's board and lodging there; that, on the Sunday following, he left Washington for Pittsburgh, Pennsylvania, where he hoped to obtain employment, and left his wife at the said hotel, and gave her money with which to support herself until he could become permanently settled, he having already paid to the hotel his wife's board in

advance; that he stayed in Pittsburgh about a week, and failed to obtain employment, and then went to Baltimore, Maryland, stopped at the latter place for a few days; that, when he returned to the hotel where he had left his wife, he found that she had left, and located her in a house of prostitution on C street N. W., Washington, District of Columbia; about four months after the marriage, he rented two rooms on East Capitol street, and sent a carriage to the house of prostitution where his wife then was living, to bring her to his home; and that, when the carriage arrived, she sent him word that she had changed her mind and would not live with him; and ever since that time the defendant has not lived with the witness; the plaintiff further testified that, prior to his marriage to her, he had met her in Washington and Baltimore on different occasions, but could not remember at what places they had met; upon being further interrogated by the court, he stated that he did not know the name of the hotel on Pennsylvania avenue; that he did not know which side of the street it was on; that he did not know who kept it; that he did not know what streets it was between; that he did not know how many days he had stayed there; that he could not state how much he had paid the hotel for his own and his wife's board while there; that he did not know how much money he gave her to support herself with when he left; that he did not know how much he paid to the hotel for his wife's board in advance; that he did not know for how far in advance he paid the board, and that he could give no idea as to any of these amounts. That his wife had been an inmate of a house of prostitution before he married her; was at the time of the marriage; and that they went together from the house of prostitution to the minister's to be married. The aforegoing being the substance of all the testimony given by the plaintiff in open court. The defendant Charlotte E. Roote, in response to questions by the court, made the following statements: That she had known the plaintiff for about two years prior to their marriage; that, for a long period of time before their marriage, she was a resident of a house of prostitution; that the plaintiff visited her at said house

on various occasions, had sexual intercourse with her, knew the nature of her life, both prior to and at the time of their marriage; that at the time of their marriage she was living at a house of prostitution, located at No. 1440 C street N. W., Washington, District of Columbia, from which house she went with plaintiff to be married, and which was known to the plaintiff at the time; that they were married about 4 o'clock in the afternoon, at the residence of the officiating clergyman, on D street, N. W., near Third street, in Washington, District of Columbia; that they went from there to a saloon near Tenth and E streets, where they procured a drink, and later in the evening they proceeded to the house of prostitution from which she was married, and stayed there for two days together, when the plaintiff left her; that, prior to their marriage, plaintiff said that after they were married she would have to stay in the house of prostitution until he got the money to take her out; that they never did stop at a hotel on Pennsylvania avenue or anywhere else at any time; that her husband never went to Pittsburgh, and did not give her any money when he left her; that she was not at any time living with her sister in Baltimore; that, some weeks after leaving the defendant, the plaintiff called to see her, and requested her to leave the house of prostitution, and come and live with him, but she refused; that about four months after the marriage her husband again called to see her, and asked her to leave this house, and come with him to live, which she agreed to do, provided he would pay the woman with whom she was living the sum of $15 for board which she then owed; that the plaintiff agreed to do, and gave her the money to pay the bill; that later during the same day he telephoned to her that he had secured rooms on East Capitol street, and would send a carriage for her in the evening to bring her away; that some time late in the evening the carriage arrived; but she changed her mind, and refused to go to her husband, and sent him word to that effect; that she was informed a few hours later that her husband and his brother were at the house to see her, but she declined to see them."

We think, in view of other undisputed testimony appearing in the record, that it is not important what the relations of com-

plainant and defendant were before and after their marriage, up to the time they separated. According to defendant's own testimony, complainant, after leaving her, came back and requested her to leave the house of prostitution and live with him. This she agreed to do if he would pay the woman she was living with a bill of $15. Complainant gave her money to pay the bill, rented rooms in a respectable part of the city, and sent for her; but, disregarding her promise, she refused to leave the place and live with him. Numerous acts of adultery committed by defendant subsequent to this time are proven beyond any doubt; and the record fails to disclose any similar act by complainant, or any act of his tending to connive at or condone the acts of defendant. True, the complainant took steps, through the agency of another man, to secure proof of defendant's adulterous acts. He took a man to the house, and pointed out his wife to him. The friend then acted as a detective. It was through the evidence of this friend that the co-respondent Mason was shown to have been closeted in a room with the defendant in the house where she was staying. The keeper of the house of prostitution corroborated the testimony of this witness to the extent that, during the time defendant was staying at her house, she habitually cohabited with men. The keeper of the house also testified that complainant visited defendant at one time when an altercation arose between them, and complainant struck defendant. Defendant afterwards told the witness that complainant wanted her to sign a paper, and also asked her to permit another man to commit adultery with her, so that he might get a divorce. This evidence, of doubtful materiality in the determination of the case here presented, purported to be nothing more than hearsay evidence; and, on the trial, defendant made no reference in her testimony to such an occurrence. We feel justified in dismissing it from further consideration.

The case may be determined upon the evidence of the defendant alone, except as to the proof of her adulterous acts, which, from the nature of the place of her habitation, might almost be presumed. These acts, however, as before stated, we consider fully established by the testimony of disinterested witnesses.

With this fact established, the case may be disposed of solely upon the evidence of the defendant. Notwithstanding the unlawful conduct of complainant and defendant before their marriage, and their reprehensible conduct in living together for a short time in the house which had been the scene of their former shame and disgrace, the law always extends to the transgressor the offer of reform, and encourages any act that bears the semblance of repentance. We think, therefore, that the status of the parties in this court must be considered from the day complainant took steps to induce defendant to leave the house of prostitution, forsake her life of shame, and live with him as his lawful wife.

In the case of *Levy* v. *Levy,* 16 Ill. App. 358, a case in which the facts were similar to the case at bar, the court held that where a man knowingly marries a prostitute, whom he had seduced before marriage, upon her promise of reformation, and she commits adultery after marriage, he is entitled to a divorce. It was also held that the rule would be the same whether there was an express promise of reformation, or the promise had to be inferred from the vows made at the marriage altar.

The complainant discharged his full obligation when he took steps to provide a respectable place of abode where he and the defendant might live together as husband and wife. Had she accepted, the complainant would be charged with having condoned her past offenses; but she refused, and continued her adulterous life. This furnishes the complainant a complete cause of action for divorce. So far as the record discloses, complainant has been guilty of no offense since he offered to live with defendant and condone the past that will prevent him from maintaining this action. He is here with clean hands. The rule that when a litigant comes into a court of equity, he must come with clean hands, refers only to the matter to be litigated, and no other. *Viertel* v. *Viertel,* 99 Mo. App. 710, 75 S. W. 187. The matter here to be litigated is the right of complainant to a divorce, by reason of defendant's refusal to join him, when afforded an opportunity, and her subsequent adulterous acts. There is nothing shown in

the conduct of complainant during this period to estop him from maintaining this action.

The judgment is reversed with costs, and the cause remanded for further proceedings in accordance with the views herein expressed.                                    *Reversed.*