**INTERNATIONAL TOURS & TRAVEL, INC., Appellant,**

v.

**William I. KHALIL, et al., Appellees.**

**No. 84-567.**

District of Columbia Court of Appeals.

Argued Nov. 20, 1984.

Decided May 8, 1985.

---

Laird Hart, Washington, D.C., with whom Robert M. Morgan and Harnam S. Arneja, Washington, D.C., were on briefs, for appellant.

Michael A. Schuchat, Washington, D.C., with whom Diane P. Burka, Washington, D.C., was on brief, for appellee Khalil.

Thomas L. Riesenberg, Washington, D.C., with whom James A. Beat, Washington, D.C., was on brief, for appellee Madison National Bank.

Jacob A. Stein, Washington, D.C., for appellee Muldoon.

Before PRYOR, Chief Judge, and NEBEKER and NEWMAN, Associate Judges.

NEBEKER, Associate Judge:

There are two issues presented in this appeal. One is whether the trial court erred in denying International Tours & Travel, Inc. (ITT) leave to amend its complaint seeking an accounting and damages from a former employee, William I. Khalil, and three other defendants. The other is whether the court erred in applying the "clean hands" doctrine to bar recovery by ITT on Khalil's counterclaim for an accounting. We hold that the trial court erred in denying leave to amend under Super.Ct.Civ.R. 15(a) and (c) and in its application of the clean hands doctrine under the facts and circumstances presented. Accordingly, we reverse and remand for further proceedings.

I

ITT is an air travel agency incorporated in the District of Columbia. From May 1975 through August 30, 1977, ITT employed Khalil as a salesman on commission. Khalil sold tickets to his own customers, primarily the Embassies of Sudan, Libya, and Iraq. He was responsible for delivering the tickets ITT issued to these embassies, collecting their payments for the tickets, and remitting the payments to ITT. ITT then paid the airlines for these tickets and paid Kahlil his commission.

On August 30, 1977, Surinder K. Wadhwa—ITT's president and chief operating officer—dismissed Khalil upon learning that Khalil was setting up another office without ITT's knowledge. Khalil subsequently started his own travel agency, Khalil International Travel Service, Inc. (KITS). Shortly after ITT discharged him, Khalil opened a personal account at the Madison National Bank. He then opened a trust account in the name of ITT without ITT's knowledge. He collected substantial amounts from the embassies in checks made out to ITT and deposited them to the ITT trustee account. The embassies owed this money to ITT for travel services.[1]

Over the next several weeks, Khalil withdrew large sums from the ITT trustee account in the form of checks which he then deposited to his personal account. ITT eventually learned of the existence of the trustee account, and made demands upon the Madison National Bank and upon Charles P. Muldoon, an attorney retained by ITT and a director of the Madison National Bank, who also advised Khalil.[2] A series of meetings between Wadhwa and Khalil failed to resolve the dispute over the funds due from the embassies for tickets sold while Khalil was still employed by ITT.

II

On June 12, 1980, ITT filed suit for an accounting and damages against Khalil,

---

1. The trial court found that ITT and Khalil had an oral agreement under which ITT was to provide office space and facilities (including its accreditation entitling it to issue tickets for domestic and international travel). Of the eight percent of fares billed, which the travel agency retained as its fee by arrangement with the airlines, Khalil was to be paid six percent. His commission was reduced by mutual agreement to five percent for tickets sold after February 1, 1976, to help offset the increased cost to ITT of providing clerical and support services to Khalil. Some office administrative expenses were Khalil's responsibility.

2. Muldoon was suspended from the D.C. Bar for ninety days for his part in this matter. *See In re Charles P. Muldoon*, No. M–66 (D.C. Oct. 29, 1981) (Order, Memorandum Opinion and Judgment).

KITS, Muldoon, and the Madison National Bank. Khalil counterclaimed for commissions still due him.[3] On February 24, 1981, the complaint was dismissed without prejudice by the trial court, based on defendants' argument that Wadhwa lacked authority to sue on ITT's behalf. At a shareholders' meeting, held March 13, 1981, Wadhwa and Elainemarie Basil, the office manager of ITT and wife of Wadhwa, were elected two of ITT's three directors.[4] At another meeting two days later, the directors appointed Wadhwa president and treasurer and appointed Basil secretary. The directors ratified Wadhwa's filing suit against Khalil, KITS, Muldoon, and the Madison National Bank.

ITT moved on March 16 for leave to amend its complaint under Super.Ct.Civ.R. 15(a) to reflect this authorization, the amendment to relate back to the date of the initial complaint, as provided by Super. Ct.Civ.R. 15(c). The defendants contended that the complaint was "void ab initio and a nullity" and that, therefore, there was nothing to which the amendment could relate back. The trial court denied the motion for leave to amend on the ground that "[s]ome causes of action may be barred by the statute of limitations."[5] ITT appealed, but this court dismissed the appeal as unripe because Khalil's counterclaim had not yet been litigated.

We now confront the issue raised by the denial of ITT's motion to amend its complaint: whether under the circumstances here the trial court should have granted leave to amend with relation back. We hold that the trial court erred in denying leave to amend.

■ Rule 15 is drafted to ensure that litigation be decided upon the merits rather than upon technical pleading rules. *Strother v. District of Columbia*, 372 A.2d 1291, 1297 (D.C.1977) (citing 3 MOORE'S FEDERAL PRACTICE ¶ 15.02[1] [2d ed. 1985]). Rule 15(a) provides in relevant part: "[After a responsive pleading has been served,] a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Leave to amend a complaint under Rule 15(a) is a decision committed to the sound discretion of the trial court, exercised consistent with accepted legal principles. *Pyramid National Van Lines, Inc. v. Goetze*, 66 A.2d 693, 695 (D.C.1949).

The trial court denied the motion based on its conclusion that the statute of limitations barred some of the claims. This conclusion necessarily assumed that the amended complaint would not relate back to the date the original complaint was filed. In making that assumption, the trial court misapprehended controlling legal principles regarding relation back of amendments under Super.Ct.Civ.R. 15(c).

■ Under Super.Ct.Civ.R. 15(c),[6] an amendment relates back not only if it

---

3. Of the total amount billed clients for fares, ITT was obligated to pay the airlines 92 percent and to pay Khalil his commission. Khalil also claimed tortious interference by ITT with his business. The trial court found in ITT's favor on that claim, which is not a part of this appeal.

4. Wadhwa's fellow shareholders and directors of record at the time the suit was filed were R. Gidwani and Ravi Chopra, who each held 33 of the 100 authorized shares. Neither Gidwani nor Chopra, however, had ever paid consideration for his shares and had not participated in the governance of ITT after the 1971 organizational meetings. In March 1981, after unsuccessful efforts to summon Gidwani and Chopra to the stockholders' meeting, Wadhwa and Basil held the meeting. They acted pursuant to the bylaws

to determine that Gidwani's and Chopra's positions as directors were vacant. They elected themselves and a third person as the new directors.

5. The trial court later denied ITT's motion for reconsideration without opinion.

6. Super.Ct.Civ.R. 15(c) provides in relevant part:
   Whenever the claim .... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if ... within the period provided by law for commencing the action against

changes the identity of a plaintiff,[7] but also if it changes the capacity in which a plaintiff is suing. *Strother, supra,* 372 A.2d at 1297; *cf. Keith v. Washington,* 401 A.2d 468, 471 (D.C.1979) (Rule 15(c) criteria appear all the more relevant when amendment is to clarify identity of existing party, not to add a new one). *Strother* involved suit under the Wrongful Death Act by an heir, who was not appointed "personal representative" until after the statute of limitations had run, even though he had timely filed suit.[8] This court reversed the trial court's dismissal of the action, holding that an amendment correcting the capacity in which a plaintiff is suing relates back to the original filing because " 'there is no change in the parties before the court [and] all parties are on notice of the facts out of which the claim arose.' " *Strother, supra,* 372 A.2d at 1297 (quoting 3 MOORE'S FEDERAL PRACTICE, ¶ 15.15[4.–1]).

▇▇▇ Appellees here seek to distinguish *Strother.* They argue that they do not challenge the capacity of ITT, the plaintiff corporation, to file suit, but rather the capacity of Wadhwa to file suit on ITT's behalf as he initially did without specific authorization in the bylaws or by a directors' resolution. They argue that the District of Columbia's interest in maintaining regularity in the operations of its cor-

porations requires us to affirm the trial court's dismissal of the complaint. We are unwilling to hold as appellees urge that the acts of the president of a small closely held corporation are without legal effect unless formally authorized. D.C.Code § 29–332(a) (1981) provides that "[t]he business and affairs of a corporation shall be managed by a board of directors." [9] The statute, however, does not preclude the well-recognized doctrine permitting close corporations to act informally—an exception to the general rule that directors must act as a board at duly convened meetings. *See Newbold v. Brennan Construction Co.,* 48 App.D.C. 90, 94–95 (holding under substantively identical predecessor statute to D.C.Code § 29–332 that "it is well settled that the president or other general officer of a corporation has power prima facie to do any act which the directors or trustees of the corporation could ratify") (citation omitted), *cert. denied,* 248 U.S. 579, 39 S.Ct. 21, 63 L.Ed. 430 (1918); *see* 2 FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 394.1 (1982).

▇▇▇ Appellees have not placed ITT's bylaws in the record; we must conclude that had the bylaws prohibited ITT's president from filing suit without authorization by the board of directors they would have been introduced as dispositive. *Newbold,*

---

him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

7. Although the rule refers by its terms only to a change in the defendant, it applies also to a change in the plaintiff. *Strother v. District of Columbia, supra,* 372 A.2d at 1298; FED.R.CIV.P. 15(c) advisory committee note (1966); *see Campbell v. United States,* 295 A.2d 498 (D.C. 1972) (Super.Ct.Civ.R. 15(c) has same meaning as federal rule).

8. The Wrongful Death Act provides that an action may be brought only by the personal representative of the deceased person. D.C.Code § 16–2702 (1981).

9. D.C.Code § 29–343(b) (1981), which appellees also cite as authority for their position, provides:

All officers and agents of the corporation, *as between themselves and the corporation,* shall have such authority and perform such duties in the management of the property and affairs of the corporation as may be provided in the bylaws, or as may be determined by resolution of the board of directors not inconsistent with the bylaws. (Emphasis added.) We construe the language we have emphasized within this provision to mean that the authority of officers to act on behalf of the corporation is an internal matter. Appellees, therefore, lack standing to raise § 29–343(b) to shield them from suit by the corporation. *See* 9 FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4216 (1976 & Supp.1984) (resolution authorizing an action or defense need not be formally passed and recorded so far as the adverse party in litigation is concerned).

*supra,* 48 App.D.C. at 94–95 (burden is on one challenging authority of officer to act to show he did not possess power he assumed to exercise, and it is insufficient merely to show board of directors did not authorize it); *see* 2 FLETCHER, *supra,* § 752 (inherently void act of corporate officer is one that is in contravention of law, in contravention of public policy, or beyond the capacity of the corporation itself). Wadhwa was president, general manager, sole active director, and joint owner (with his wife) of the only paid shares in ITT. We cannot conclude as a matter of law that Wadhwa's filing suit on ITT's behalf was a nullity. His act was instead one that could be—and was—ratified by ITT's directors. That being the case, the rule of *Strother* applies. The trial court erred in denying ITT's motion to amend with relation back because here, as in *Strother, supra,* 372 A.2d at 1297, the defendants had notice not only of the claims against them, but also of the party asserting them, and therefore suffered no cognizable prejudice.[10]

### III

After dismissing ITT's claims, the trial court considered Khalil's counterclaim for an accounting. The trial court found that after all offsets Khalil owed ITT approximately $25,000, but that ITT's recovery was barred by "unclean hands." The trial court erred in its application of the clean hands doctrine.

The facts underlying the "clean hands" issue can be stated briefly. Khalil had competition for his embassy business from agents in New York, Detroit, and Washington. The embassies with which Khalil dealt had demonstrated a preference for Arab travel agents.[11] In June 1977, Khalil told Wadhwa that a Palestinian travel agent in Detroit had approached an embassy with the information that ITT was not owned by Arabs. Khalil, Wadhwa, and Basil then contacted ITT's New York attorney[12] for help in preparing documents purporting to show that Khalil owned shares in ITT and was an officer and director. The attorney sent four documents to Basil: (1) a stock certificate in Khalil's name for 10 shares at no par value; (2) a transfer of 10 shares from Khalil to Wadhwa and Basil with Khalil's name typed for signature; (3) a letter to be typed on ITT stationery for Wadhwa's signature welcoming Khalil as a vice president and director; (4) a statement typed for Khalil's signature resigning his office as vice president and director.

On June 25, 1977, Khalil and Wadhwa signed all the documents, except for the stock certificate. Khalil wished to show a larger share of ownership. Accordingly, on June 27—the day on which he planned to show officials at an embassy his "proof" of ownership and management of ITT—he brought Wadhwa another stock certificate signed in Wadhwa's name as president and in Basil's name as secretary.[13] Khalil then purportedly showed the embassies the documents to retain their business.

---

**10.** Under Super.Ct.Civ.R. 15(a), "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served...." We note that instead of an answer, defendant Muldoon filed a motion to dismiss or in the alternative for summary judgment. Neither a motion to dismiss nor one for summary judgment is a responsive pleading for purposes of Rule 15(a). *Sonneville v. Stedef, Inc.,* 449 A.2d 1087, 1089 (D.C.1982). ITT, therefore, had the right under Rule 15(a) to amend its complaint as against Muldoon as a matter of course. *Id.* This right was not lost when the court granted Muldoon's motion and was not waived when ITT submitted its amended complaint in the form of a motion for leave. *See id.* (citing *La Batt v. Twomey,* 513 F.2d 641, 650–51 (7th Cir.1975); *Massachusetts Mutual Life Insurance Co. v. Ambassador Concessions, Inc.,* 489 F.2d 282 (5th Cir.1973)); *cf. Cassell v. Michaux,* 99 U.S.App.D.C. 375, 240 F.2d 406 (1956).

**11.** Another Washington travel agent sometimes dealt with the Sudanese Embassy, but Khalil got this business after he told the embassy that the agent was Jewish.

**12.** The attorney is now deceased. No claim against his estate is a part of this appeal.

**13.** Basil was not at that time ITT's secretary; but the certificate was only to show an ownership interest, not actually create one.

In reaching its conclusions on the merits, the trial court considered in some detail the course of the business relationship between Khalil and ITT. It directed that the remaining sum in the ITT trustee account at the Madison National Bank be turned over to ITT. In addition, the court found that the tickets paid for and issued by ITT to Khalil's embassy customers but returned unused for refund were the property of ITT. As its "bottom line" on the accounting, the trial court concluded that Khalil still owed ITT approximately $25,000. The court found, however, that "[s]ince the amounts constituting the basis for an accounting are the results of a deceptive scheme proposed by Khalil and agreeably concurred in by Wadhwa, both parties came into court with unclean hands and therefore neither is entitled to an accounting." We disagree.

■ The equitable doctrine of unclean hands only applies where there is misconduct by the plaintiff in the same transaction that is the subject of his claim. *Financial General Bankshares, Inc. v. Metzger,* 523 F.Supp. 744, 772 (D.D.C.1981), *vacated for lack of pendent jurisdiction,* 220 U.S.App.D.C. 219, 680 F.2d 768 (1982); *Roote v. Roote,* 33 App.D.C. 398, 403 (1909); 2 POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 399 (1941). Unless the amount owed the plaintiff is the direct result of the unethical behavior—in this case, misrepresentation—the clean hands doctrine does not bar the plaintiff's recovery.

Here, the record shows that Khalil's and ITT's business relationship endured for over two years. During the two years, there was a steady stream of transactions: tickets sold by Khalil to the embassies, payments made by the embassies, commissions earned by Khalil and paid or owed to him by ITT, and sums for office expenses accrued by Khalil and paid or owed to ITT. The scheme to convince Khalil's embassy customers that he was a part owner and officer of ITT occurred only two months before ITT dismissed him. The trial court has not identified the factual basis for its conclusion that the sum ultimately owed ITT by Khalil resulted directly from the deceptive scheme. Some or all of the amount Khalil owed may be for his share of ITT's office expenses, or may be for tickets purchased by the embassies before Khalil represented himself to them as a co-owner of ITT or after the embassies knew he was no longer associated with ITT.[14] From the record before us, we are unable to determine which ticket sales are the direct result of the misrepresentation and how those specific sales figure in the $25,000 bottom line figure. Nor can we perceive the basis for the trial court's conclusions regarding unclean hands, based on the same record.

■ It is true that a court of equity will not in general decree an accounting as to matters growing out of an illegal or immoral transaction in which parties jointly engaged. *See McMullen v. Hoffman,* 174 U.S. 639, 654, 19 S.Ct. 839, 845, 43 L.Ed. 1117 (1899); 2 POMEROY, *supra,* § 402f. Relief, however, is sometimes granted after the transaction has been completed and nothing is asserted but title to the money. *See Brooks v. Martin,* 69 U.S. (2 Wall.) 70, 79–80, 17 L.Ed. 732 (1863); 2 POMEROY, *supra,* § 402f & n. 11. Here, the transaction was complete; the third parties—the embassies—had received the travel services for which they were charged and had claimed no economic loss therefrom. After going to the merits on the counterclaim, the trial court erred in failing to identify its factual basis for determining that the entire sum owed by Khalil was causally related to unclean hands on the part of ITT. We see no reason to deny recovery to ITT of any portion of the sum owed by Khalil which does not in fact have its source in

---

**14.** The record shows that ITT had four transactions with the Libyan embassy for ticket sales totalling $8,321 after August 30, 1977, when Khalil had been discharged by ITT. It is thus not at all clear to what extent the imposture actually influenced the embassies in their choice of a travel agent.

ITT's concurrence in Khalil's deceptive scheme and which in any event resulted in no pecuniary loss to the third parties involved.

*Reversed and remanded.*