Barbara DRAYTON, et al., Appellants,

v.

PORETSKY MANAGEMENT, INC., Appellee.

PORETSKY MANAGEMENT, INC., Appellant,

v.

Barbara DRAYTON, et al., Appellees.

Nos. 81–24, 81–270.

District of Columbia Court of Appeals.

Argued Feb. 9, 1982.

Decided May 31, 1983.

Bernard A. Gray, Sr., Washington, D.C., for appellants in No. 81–24 and appellees in No. 81–270.

Susan S. Magazine, Washington, D.C., with whom Jeffrey M. Hamberger, Washington, D.C., was on the briefs, for appellee in No. 81–24 and appellant in No. 81–270.

Before NEWMAN, Chief Judge, and KERN and BELSON, Associate Judges.

BELSON, Associate Judge:

Before us are cross-appeals from a judgment entered by the trial court in a suit for possession in the Landlord and Tenant (L & T) Branch of the Superior Court. For convenience we refer to Barbara Drayton, *et al.*, as appellants or tenants and to Poretsky Management, Inc., as appellee or landlord. Landlord challenges the trial court's assumption of jurisdiction to rule on the validity of two rent increases, arguing that the District of Columbia Rental Accommodations Commission (RAC) rather than the

Superior Court had jurisdiction to make such a determination.[1] As to the second rent increase, landlord contends also that the trial court erred substantively in invalidating a 7% rent increase taken by the landlord pursuant to the Emergency Heating Oil Rent Adjustment Act of 1979, D.C.Act 3–115. Tenants assert that the trial court erred in denying their oral motion for summary judgment based on landlord's failure to file a statement of certification of costs with the trial court in accordance with our decision in *Apartment & Office Building Association of Washington v. Moore,* 359 A.2d 140 (D.C.1976) (*Moore* II).[2] Tenants also contend that the trial court erred in ruling that the June 1, 1979 rent increase was valid.[3] Although we hold that primary jurisdiction to pass upon the validity of the rent increases was in the Rent Administrator and the RAC, we conclude that the trial court did not err in ruling that the June 1, 1979, rent increase was to be considered a part of tenants' monthly rent for the purpose of calculating the amount required of tenants in order to exercise their equitable right of redemption pursuant to *Trans-Lux Radio City Corp. v. Service Parking Corp.,* 54 A.2d 144 (D.C. Mun.App.1947). We reverse the trial court's decision not to include the 7% emergency fuel adjustment for *Trans-Lux* purposes.

I

On June 17, 1968, landlord and tenants entered into a lease agreement for an apartment at 7 Elmira Street, S.E. The apartment is one of 20 rental units in one of the six buildings in Halley Gardens, an apartment complex managed by landlord.

Rent increases were put into effect on June 1, 1979 and January 1, 1980.

On June 10, 1980, landlord filed a suit for possession of the tenants' apartment alleging nonpayment of rent. Tenants filed an answer, contending that rent was not due in the amount claimed because the premises were unsafe and unsanitary and also because the rent increases were illegal. Tenants also counterclaimed for the alleged overpayments of rent. They had not, however, sought review of the increases by the Rent Administrator.

At the outset of the nonjury trial that followed, the court denied tenants' oral motion for summary judgment, ruling that the requirement of filing a statement of certification of costs with the trial court was not a substantive requirement that would preclude a rent increase where the statement had not been filed. At the conclusion of the trial, the court held that tenants were entitled to a rent abatement for the months of August and September, 1980, because of the existence of housing code violations. By subsequent written order the court ruled that by reason of its duty to determine the amount of arrearages tenants would be required to pay in order to exercise their *Trans-Lux* right of redemption it had jurisdiction to determine the validity of the rent increases, and held that the June 1, 1979, rent increase was valid, but that the January 1, 1980, increase was invalid.

Since there was more than enough money deposited in the registry of the court to cover the amount of rent tenants were found to owe, the court entered judgment for tenants in landlord's action for possession, and ordered disbursement of the monies in the registry. The trial court did not

---

1. The Rental Accommodations Commission has been replaced by the Rental Housing Commission. D.C.Code §§ 45–1511, 45–1512 (1981). The latest rent control provisions are codified at D.C.Code §§ 45–1501 (1981) *et seq.*

2. Summary judgment should not have been sought by oral motion. Superior Court Landlord and Tenant Rule 2 incorporates Super.Ct.

Civ.Rules 12–I(k) and 56, which govern summary judgment procedures. They require that such motions be in writing.

3. Tenants also contend that the method of service of notice of the June 1979 rent increase was defective and that the rent increase was therefore invalid. We find no merit in this contention.

enter judgment on the counterclaim.[4] These appeals followed.

## II

We turn first to landlord's challenge to the trial court's jurisdiction to determine the validity of the rent increases. Landlord contends that tenants could not challenge the rent increases in Superior Court since the RAC had jurisdiction to determine legal rental rates, and tenants failed to exhaust their administrative remedies there.[5] As we have seen, the trial court ruled that it had jurisdiction under *Trans-Lux* to make a specific finding of the amount of rent in arrears.

Our resolution of this issue is reached upon consideration of two important policies. One is embraced in the doctrine of primary jurisdiction; the second is the long-established policy of preserving the summary nature of actions for possession in the Landlord and Tenant Branch of the Superior Court.[6]

■ Under the doctrine of primary jurisdiction, when a claim is originally cognizable in the courts but requires resolution of an issue within the special competence of an administrative agency, the party must first resort to the agency before he or she may sue for an adjudication. 2 Am.Jur.2d *Administrative Law* § 788 (1962). Although the doctrines often overlap, the doctrine of primary jurisdiction should not be confused, as it was by appellee here, with the doctrine of exhaustion of administrative remedies. In *United States v. Western Pacific Rail-*

*road Co. Inc.,* 352 U.S. 59, 62–3, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956), the Supreme Court differentiated between the two doctrines as follows:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. (citation omitted.)

Earlier, in *Far East Conference v. United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952), the Supreme Court had discussed two factors, uniformity of result and application of specialized and expert knowledge, which warrant invocation of the doctrine of primary jurisdiction. The Court indicated that the two factors were part of the same principle:

---

4. It may be that counsel and the court deemed such a judgment redundant, since the ruling on the complaint fully resolved the issue raised in the counterclaim.

5. Before the trial court, landlord also contended unsuccessfully that the tenants had lost their opportunity to bring the matter before the RAC since its limitation period of 12 months had elapsed and the increase was, therefore, not subject to challenge. We do not reach the issue whether, under RAC rules, a challenge to a rent increase of the type mounted by tenants was required to be made within twelve months of the effective date of the rent increase.

6. Under the common law, a landlord who was lawfully entitled to possession could regain that possession by peacefully reentering the premises and evicting the tenant. *Mendes v. Johnson,* 389 A.2d 781, 783 (D.C.1978). The landlord's exercise of his common law right of self-help, however, could be violent and often deprived the tenant of his equitable defenses. *Id.* at 786–87. In *Mendes,* we held that Congress intended to abolish the common law right of self-help and to replace it with a summary procedure "whereby a landlord [can] quickly reacquire possession from a defaulting tenant with the aid of judicial process." *Id.* at 783, 786–87; *see* D.C.Code §§ 16–1501, 45–1410 (1981).

"now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

*Far East Conference, supra,* 342 U.S. at 574–75, 72 S.Ct. at 494.

The appropriateness of applying the doctrine in connection with challenges to the legality of rent increases becomes apparent when one considers the relative complexity of the issues raised by such challenges in the light of the workload of the L & T Branch where in recent years more than 100,000 summary actions for possession have been processed annually through what is essentially a one-judge branch of the trial court.[7]

A brief review of the manner in which tenants can challenge rent increases under District of Columbia rent control laws and regulations will help place in perspective the relationship between court proceedings and proceedings before the Administrator and the RAC.

Under the Rental Housing Act of 1977, D.C.Law 2–54 (codified at D.C.Code §§ 45–1681 (1980 Supp.) *et seq.*), which was in effect at times pertinent to this case, the RAC was authorized to make an adjustment of general applicability to the rent ceilings established by the Act. D.C.Code § 45–1687(b) (1980 Supp.). Sections 260–267 of the Rules of the Rental Accommodations Commission provided for such an adjustment. Before the effective date of such an increase, the landlord was required to give the tenant 30 days advance notice. D.C. Rental Accommodations Commission Rules, § 263.1. In addition, it was required that the rental units be in compliance with the housing regulations. *Id.,* § 263.3(d). Under § 265, the landlord was required to file a certificate of calculation of the increase with the Rent Administrator. Section 266 provided that the tenant could request a review of the certificate by the Rent Administrator. That request had to be filed within 12 months of the effective date of the rent increase. *Id.,* § 266.2. Furthermore, the tenant could challenge the rent increase before it took effect on the basis that the landlord had not met all the prerequisites to an increase, *e.g.,* substantial compliance with the housing code. *Id.,* § 266.4.

A tenant could challenge a § 45–1687(b) (generally applicable) rent increase as it affected the rent for his premises before it went into effect by filing a petition with the Rent Administrator. D.C.Code § 45–1687(e) (1980 Supp.). In the absence of a challenge by the tenant, the rent increase would become effective.[8]

It was against this background of court and agency procedures that we ruled last year in *Interstate General Corp. v. District of Columbia Rental Accommodations Commission,* 441 A.2d 252 (D.C.1982), that the Rent Administrator has primary jurisdiction to determine the validity of a rent

---

**7.** Annual Report of the D.C.Court 1981, pp. 40, 63. Cases in which trial by jury is demanded are certified for trial before judges assigned to hear civil trials. Super.Ct. L & T Rule 6.

**8.** In contrast, before other rent increases by a landlord can be made, a landlord was required to file a petition with the Rent Administrator and receive approval. *See* D.C.Code § 45–1691 (1980 Supp.) (capital improvements), § 45–1692 (changes in services and facilities), § 45–1693(c) (hardship petitions) and § 45–1694 (voluntary vacancies).

increase. We held that the Administrator's decision was controlling even in the face of a contrary ruling by the Superior Court in an action for declaratory judgment. *Id.* at 254.

■ In the instant case, tenants did not file a petition challenging the rent increases before the increases went into effect, nor did they seek review after they became effective. Tenants did, however, assert the illegality of the increases in their pleadings in the L & T Branch. When the case was called for trial (before our decision in *Interstate General*) the trial judge took the view that he should determine the validity of challenged rent increases and the total amount of rent arrearages so that tenants could pay the amount of rent due plus interest and costs in order to avoid forfeiture of their leases for nonpayment of rent. *Translux, supra,* 54 A.2d at 146–47. The trial judge took the issues concerning the rent increases under advisement at the conclusion of trial on October 24, 1980 and, on December 17, 1980, issued a carefully considered written order setting forth the reasons for his conclusions that the first rent increase was valid, but the second invalid. We hold that the L & T Branch should not have undertaken to determine the validity of the rent increases.

Application of the doctrine of primary jurisdiction requires that when there is pending before the Administrator or the RHC a challenge to a rent increase that bears upon the amount of rent owed by a tenant defending a possessory action brought for nonpayment of rent, the L & T Judge should stay the action to await the ruling of the Administrator or, if an appeal is taken to the RHC, then of that body.[9] If the landlord prefers to go ahead with the trial of the possessory action on the basis of the rent level as it was apart from the challenged increase, then the L & T Branch should permit landlord to do so.[10]

■ Where, as in the instant case, tenants assert in their pleadings that a rent increase is invalid, but have not challenged it before the Rent Administrator, the court may in the exercise of its discretion, accord them a reasonable time to file such a challenge. We deem it inappropriate, however, in view of the great number of L & T actions, to hold that the L & T Branch should certify to the Rent Administrator all cases in which a tenant has alleged in court pleadings the invalidity of a rent increase but has not filed a corresponding challenge with the Rent Administrator. The administrative burden of such referral procedures would obviously be excessive. Instead, we must leave it to individual litigants to bring before the Rent Administrator any challenges to rent increases.

If no such challenge has been brought before the Rent Administrator by the time set for trial (including any reasonable continuances allowed for that purpose) the L & T Branch is not to undertake to adjudicate the validity of the rent increase. In our view it is inconsistent with the summary nature of L & T proceedings as well as the doctrine of primary jurisdiction to require that such matters be adjudicated in that branch.[11] Instead, the trial judge should

9. Since the parties have the right to appeal the final decision of the RAC (now RHC) to this court, it follows that the trial court should also await the outcome of any such appeal. *See Pennsylvania Railroad Co. v. United States,* 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960). Expedited review may be sought under Rule 4 of the rules of this court.

10. The parties have neither briefed nor argued the question of the issue or claim preclusion (res judicata) effects of judgments in L & T actions where the landlord has chosen to proceed directly to trial on the basis of the lower previous rent rather than await the result of the administrative action. A later action for money judgment may be affected by that choice. Nor have they addressed the matter of the preclusive effect of the L & T Branch's determination of the amount of rent due where tenant has failed to bring an administrative challenge to the increases before the trial goes forward. Later administrative review may be foreclosed. Since these matters are not before us here, we express no view on them.

11. The impracticality of doing so is exemplified by the instant case in which, after a lengthy trial, the trial judge took the issues involving

assume the validity of the increase and calculate the amount of rent due on that basis.[12]

In the instant case, the trial judge undertook to adjudicate the legality of two rent increases. Tenants had not sought review of either before the Rent Administrator. If the procedure we have described above had been in place, the trial judge would have assumed the validity of both rent increases. Although we are mindful of our holding with respect to the doctrine of primary jurisdiction we have, nevertheless, in the interest of fair resolution of this particular appeal, considered the legality of the two rent increases, and determined that the result would have been the same if the trial judge had assumed the validity of the increases. Both were valid.

■ The trial court ruled that the June 1, 1979 increase was valid. We agree. Pursuant to §§ 260–267 of the Rental Accommodations Rules, the Commission authorized a general rent increase to compensate for increased operating costs. Tenant contended that under § 208(a) of the RAC Rules, the existing rent was required to be at the rent ceiling before a rent increase could be implemented. Rule § 101(b), however, provided that specific regulations govern the general regulations in the case of an apparent conflict between regulations. The specific prerequisites to this one-time rent increase are set forth in § 263 of the Rules and do not contain a requirement that the existing rent be at the rent ceiling before the rent is increased. Therefore, the trial court did not err in validating the June 1, 1979 increase even though the previous rent had not been at the rent ceiling.

The trial court next addressed the 7% rent increase which the landlord had placed in effect on January 1, 1980, under the Emergency Heating Oil Rent Act of 1979, D.C.Act 3–115.

■ Under §§ 272.1 and 272.2 of the Rental Accommodations Commission Rules implementing the Emergency Heating Oil Rent Act of 1979, a fuel pass-through rent increase of 7% was authorized for housing accommodations with 100 or fewer units, and a 3.5% increase was authorized for those with 101 or more units. Landlord argued that the 7% increase it took was justified since tenants resided in a building containing only 20 units.

The trial court reached the merits of whether landlord was entitled to this increase, ruled it was not since the apartment complex had 110 units, and invalidated the entire January 1, 1980 rent increase.

The trial court reasoned that since the increases had been applied for by the landlord for the entire complex rather than on a building-by-building basis, the total number of units in the complex controlled as to whether landlord was entitled to the 7% increase.

However, in an order dated May 23, 1980, in an unrelated proceeding, *Wallace v. Poretsky Management Co.,* Decision of Rent Administrator (May 23, 1980), the Rent Administrator had ruled that a 7% increase was proper for a four-unit building that was part of an apartment complex with over 250 units. The Rent Administrator based this conclusion upon the fact that a single boiler was used to heat eight units rather than 101 or more units.[13] The Rent Administrator's interpretation of the regu-

---

rent increases under advisement, considered the legal memoranda submitted by the parties and, over 50 days later, issued a six page order.

**12.** This procedure should be followed in all actions in the L & T Branch, in which the legality of rent increases is raised, including those in which there are claims or counterclaims seeking money damages. In other civil actions, there is not usually a comparable requirement for expedition. In such cases, of course, the court must also apply the doctrine

of primary jurisdiction. But the situation may not warrant assuming the validity of a rent increase where no administrative challenge has been mounted. We leave it to the trial court to fashion an orderly means of implementing the doctrine of primary jurisdiction in civil actions other than L & T actions.

**13.** This ruling was apparently not called to the trial judge's attention.

lations is entitled to great weight. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *Dankman v. D.C. Board of Elections and Ethics,* 443 A.2d 507, 514 (D.C.1981) (en banc); *Snider v. Board of Appeals and Review,* 342 A.2d 50, 51 (D.C.1975). Applying the regulations as so interpreted to the facts of this case, we are satisfied that landlord here was entitled to the 7% increase. Thus, in this particular case, the same result should have been reached whether the trial court assumed the validity of the two increases or it determined their propriety.

We add that the trial court proceeded correctly in considering and determining the amount of abatements due to housing code violations, even though the Rent Administrator may inquire into the existence of housing code violations in passing upon applications for rent increases. D.C. Rental Accommodations Rules, § 263.3(d). Such issues routinely have been litigated in Superior Court for many years in both jury and nonjury trials. We are of the view that the doctrine of primary jurisdiction has no application to these issues.

### III

 Tenants contend that the trial court erred in denying their motion for what was termed summary judgment based on landlord's failure to file a certified statement of costs with the court pursuant to *Moore II.* The trial court ruled that the filing of the statement with the court was merely a technical requirement. We conclude that pursuant to the order appearing in the appendix to *Moore II,* the landlord is required to file the certified statement with the Rental Housing Commission only, and not with the court. *See Apartment & Office Building Association of Washington v. Moore, supra,* 359 A.2d at 144.

### IV

In conclusion, we hold that the Landlord and Tenant Branch is to assume that a rent increase of general applicability is valid for the purpose of determining the amount re-

quired of a tenant to effect equitable redemption under the *Trans-Lux* doctrine unless a proceeding seeking review of, or otherwise challenging, a rent increase is actually pending before the Commission prior to the commencement of the L & T trial. Where such a proceeding is pending, the trial court should either stay the possessory action pending the administrative determination of the validity of the rent increase or, at the option of landlord, proceed with the trial on the basis of the rent less the challenged increase. We therefore reverse and remand the trial court's denial of the 7% rent increase effective January 1, 1980. In all other respects, we affirm the trial court's judgment.

*Affirmed in part; Reversed and remanded in part for further proceedings consistent with this opinion.*