**Muriel YASUNA, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION,**
**Respondent.**

**No. 84–981.**

District of Columbia Court of Appeals.
Argued Oct. 8, 1985.
Decided Feb. 5, 1986.

Louis P. Robbins, with whom Stephen O. Hessler, Washington, D.C., was on brief, for petitioner.

Richard B. Nettler, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before NEBEKER and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This is an appeal by landlord Muriel Yasuna from a decision and order of the Rental Housing Commission which affirmed an award of treble damages for alleged rental overcharges to tenant John Simmons. The landlord challenges the assumption of the Rental Housing Commission's (RHC) jurisdiction to rule on rental overcharges in light of prior Superior Court judgments in her suits for possession. The landlord also argues that the award of treble damages was inconsistent with RHC regulations. We find no merit in these arguments and accordingly affirm the order of the RHC.

On July 8, 1982, tenant moved into 1531 31st Street, N.W., Apartment 4, paid $650 as a security deposit, and $434 as a pro-rated rent payment for July rent. Tenant's failure to pay rent in August and September and to sign a lease agreement prompted the landlord to serve tenant with a notice to quit and, in October, to file suit for possession based on nonpayment of rent in the Landlord and Tenant Branch of Superior Court (hereinafter *Simmons I*). A protective order was entered and tenant was ordered to pay monthly rent of $650 into the court registry. On October 27, 1982, tenant wrote the landlord concerning housing conditions, and subsequently received a second notice to quit and vacate after the first had apparently expired.

On November 18, 1982, landlord was served with an emergency notice of a housing code violation for failing to provide tenant's apartment with heat. The violation was not abated until December 9, 1982, when the landlord was served with another notice of housing code violations. That same day, the landlord filed another suit for possession based on breach of lease in the Superior Court (*Simmons II*) following expiration of the second notice to quit.

While the two *Simmons* cases were pending before the Superior Court, and before filing answers to either of the complaints, tenant filed a complaint with the Rental Accommodations Office (RAO) on December 17, 1982. Among other complaints, tenant alleged that landlord's rent exceeded the applicable rent ceiling. Supporting this claim were allegations that landlord had neither properly registered with the RAO since 1977, when rent for the unit was $425, nor filed proper rent increase forms. Tenant realleged these claims in his answer to *Simmons I* filed on December 27, 1982. The tenant filed a motion to dismiss the complaint in *Simmons II*.

On January 11, 1983, a hearing on *Simmons I* was held in the trial court concerning the existence of a lease and the circumstances surrounding occupancy of the unit. The trial of *Simmons I* was concluded on January 26, 1983, and the case taken under advisement. A hearing on *Simmons II* was held on January 31, 1983. The court entered judgment in favor of the landlord for possession. Findings in *Simmons II* were that tenant leased the rental unit for $650 per month; tenant had not paid rent for August and September; a notice to quit

was properly served and, tenant had failed to depart; the housing code violations did not warrant a reduction in rent because the landlord had attempted to remedy matters; and the premises had been damaged as a result of tenant's occupancy. No specific finding about the rent ceiling was made, nor was the issue raised in the answer.[1]

*Simmons I* was decided on February 16, 1982. The trial judge found that tenant had neither paid rent for August 1982 nor signed a lease. Because tenant had failed to establish housing code violations, the court stated he was not entitled to recoupment. Landlord was therefore entitled to possession.[2]

Meanwhile, the RAO proceedings went forward. The landlord's January 13, 1983 motion to dismiss on the ground that litigation was proceeding in the Superior Court was heard and denied on February 24, 1983. In its June 10, 1983 decision and order, the RAO found that landlord had not registered the housing unit as required under § 206 of the Rental Housing Act of 1980, D.C.Code § 45–1516 (1981), and that the rent ceiling for tenant's unit was $425. Landlord was ordered to pay the difference between rent paid and the proper rent set off by any rent unpaid, as well as a $1,000 fine for willfully violating the provisions of the Rental Housing Act. Both parties appealed the decision to the Commission.

In its November 30, 1983 decision, the Commission reversed and vacated the $1,000 fine and remanded on the issues of (a) awarding treble damages, and (b) the failure to provide heat as constituting a substantial violation of the housing code. Affirming rulings on the rent ceiling, the Commission rejected landlord's argument challenging the jurisdiction of the RAO to determine rent ceilings.

In its March 30, 1984 decision on remand, the Rent Administrator ruled that tenant was entitled to a rent reduction as a result of landlord's failure to provide heat, as well as treble damages. Following an appeal by landlord, the Commission, on July 13, 1984, affirmed the award of treble damages on the basis that the landlord exceeded the maximum allowable rent ceiling, but reversed the award of rent reductions on the basis of housing code violations. Landlord filed this appeal.

■ It is well established that the Rental Housing Commission has primary jurisdiction over rent stabilization issues. *See* D.C.Code § 45–1515 (1981). In addition to the statutory grant, case law has made it clear that the doctrine of primary jurisdiction requires deferral to administrative agencies by virtue of the agency's statutory authority or unique expertise. *See Interstate General Corp. v. District of Columbia Rental Accommodations Commission,* 441 A.2d 252, 254 (D.C.1982). Other case law affirms that the proper channel through which to adjudicate rent ceiling claims is the Rental Commission. *See, e.g., Kew Gardens Joint Venture v. District of Columbia Housing Commission,* 359 A.2d 269 (D.C.1976) (discussing the proper body to review orders of the Housing Rent Commission); *see also Gibson v. Johnson,* 492 A.2d 574, 575 n. 1A (D.C.1985) (although the issue of rent ceilings came before the trial court, this court noted the parties failed to raise the issue of primary jurisdiction).

In *Drayton v. Poretsky Management, Inc.,* 462 A.2d 1115 (D.C.1983), this court reiterated the principles of primary jurisdiction and clarified their application:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of ad-

---

**1.** On February 1, 1983, in return for tenant's agreement to voluntarily vacate the premises by February 16, 1983, the landlord agreed to stay execution of judgment in *Simmons II.* Apparently tenant failed to abide by the agreement and a writ of restitution was obtained. Landlord's motion to release four months' rent from the Registry was granted on March 4, 1983.

**2.** Appeals to this court of both *Simmons I and II* were dismissed before the administrative agency made a determination on the rent ceiling issue. *Simmons I* was apparently dismissed on the grounds of mootness.

ministrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.... "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. (Citations omitted)

*Id.* at 1118 (citing *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 62–3, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956); *see also Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 96 L.Ed. 576 (1952)). Holding that the Landlord and Tenant Branch should not have undertaken to determine the validity of rent increases when tenant had filed a petition with the Rent Administrator, this court reasoned:

Application of the doctrine of primary jurisdiction requires that when there is pending before the Administrator or the RHC a challenge to a rent increase that bears upon the amount of rent owed by a tenant defending a possessory action brought for nonpayment of rent, the L&T Judge should stay the action to await the ruling of the Administrator or, if an appeal is taken to the RHC, then of that body. If the landlord prefers to go ahead with the trial of the possessory action on the basis of the rent level as it was apart from the challenged increase, then the L&T Branch should permit landlord to do so.

Where ... tenants assert in their pleadings that a rent increase is invalid, but have not challenged it before the Rent Administrator, the court may in the exercise of its discretion, accord them a reasonable time to file such a challenge....

If no such challenge has been brought before the Rent Administrator by the time set for trial ... the L&T Branch is not to undertake to adjudicate the validity of the Rent increase. In our view it is inconsistent with the summary nature of L&T proceedings as well as the doctrine of primary jurisdiction to require that such matters be adjudicated in that branch. Instead, the trial judge should assume the validity of the increase and calculate the amount of rent due on that basis.

*Drayton, supra,* 462 A.2d at 1120–21 (footnote omitted). *See also Washington Federal Savings & Loan Association v. Whiteside,* 488 A.2d 936 (D.C.1985); *Interstate General Corporation v. District of Columbia Rental Accommodations Commission,* 441 A.2d 252 (D.C.1982).

Though *Drayton* had not yet been decided when this case arose, the procedure outlined in *Drayton* was followed. Before the trial court had adjudicated either *Simmons I* or *II,* tenant filed a complaint with the RAO challenging the amount of rent due. Despite tenant's raising the same issue in his answer to *Simmons I,* the court never addressed the validity of the rent ceiling and proceeded on the assumption that the amount charged for the unit was proper. Given the requirement of expedition in a possessory action, the trial court properly did not decide or litigate the propriety of the rent ceiling.[3] We conclude then that, in this case, primary jurisdiction precluded the adjudication of the rent ceil-

**3.** Appellant argues that the doctrine of *res judicata* precludes a ruling by the RAO in this case. We find the doctrines of collateral estoppel and primary jurisdiction more apposite. First, the severability of the issue of possession from the issue of rent due is clear. *See, e.g., Clay v. Green,* 404 A.2d 959, 960 (D.C.1979). Second,

the tenant preserved his right to adjudicate rent ceiling issues by filing a complaint with the administrative agency entrusted with primary jurisdiction over those issues before their adjudication in the trial court. *Cf. Drayton, supra,* 462 A.2d at 1115, 1120 n. 10.

ing in the action for possession in the Superior Court and required its adjudication before the RAO.

 We turn now to the issue of the imposition of treble damages. D.C.Code § 45–1591(a) (1981) provides that a landlord who knowingly demands rent for a rental unit in excess of the maximum allowable rent shall be liable for the amount exceeding the rent ceiling or treble that amount. The Commission regulations further provide that "[r]efunds of rent shall be trebled unless the surrounding circumstances of the violations indicate that the landlord acted in good faith and that good cause exists for providing only a single award." 14 DCMR § 3410.2. With no showing of special circumstances warranting a single award,[4] we find no abuse of discretion in awarding these damages. *See Delwin Realty Co. v. District of Columbia Rental Housing Commission*, 458 A.2d 58, 60 (D.C.1983); *Remin v. District of Columbia Rental Housing Commission*, 471 A.2d 275, 278 (D.C.1984).

*Affirmed.*

---

**4.** As indicated earlier in this opinion, landlord's success in her suit for possession is not dispositive of the rent ceiling issue.